[Civ. No. 6319. Third Dist.—May 15, 1941.]

CLAUDE M. JONES et al., Plaintiffs and Appellants, v. PLEASANT VALLEY CANAL COMPANY (a Corporation) et al., Respondents; J. A. WARDLAW et al., Interveners and Appellants.

J. A. Wardlaw and R. V. Wardlaw, *in pro. per.*, and Adolph Feierbach for Appellants.

Farnsworth, Burke & Maddox, James K. Abercrombie, John F. Downey, John Preston King, Russell & Heid and Neil M. Ruge for Respondents.

HELD, J., *pro tem.*—This action involves certain water rights on Tule River, a large natural watercourse having its source in the Sierra Nevadas in the easterly portion of the county of Tulare, in this state, and flowing thence in a general westerly direction in its natural channel in the direction of and into Tulare Lake, in the county of Kings.

The plaintiffs, Claude M. Jones, W. W. Slayden, and Emma Akin, claiming ownership as tenants in common of a certain water ditch leading from the south side of Tule River in a general westerly and southwesterly direction for a distance of approximately four miles, together with the right to divert from Tule River, by means of said ditch, 5 cubic feet of water per second, commenced this action, in form to quiet title, on August 18, 1926. The ditch so claimed by plaintiffs has been variously known as the Crabtree-Akin ditch, the Osborn-Crabtree ditch, and the Jones-Slayden ditch. The water right claimed by plaintiffs is based upon appropriation, and is known as the Osborn-Crabtree right.

On December 30, 1929, a complaint in intervention was filed, in which the interveners in various groups claimed ownership to certain ditches leading from Tule River, together with certain appropriative water rights, as follows:

J. A. Wardlaw, R. V. Wardlaw, D. D. Hoag, and Lillian F. Hollenbeck, the Clement and Manier ditch, sometimes known as the Cameron and Manier ditch, and the right to divert 17 cubic feet of water per second.

Anna B. Wardlaw, the Rose or Marksbury ditch, and the right to divert 5½ cubic feet of water per second.

Wm. H. Traeger and Anna B. Wardlaw, the Foote ditch, and the right to divert 3¼ cubic feet of water per second.

H. A. Wilcox, Grace A. Traeger, Wm. G. Moser, and L. O. Brough, the Wilcox ditch, and the right to divert 6½ cubic feet of water per second.

Sena M. Wallace, Frank Harkey, C. J. Byers, and Wm. H. Traeger, the Geo. H. B. Vincent ditch, and the right to divert 6 cubic feet of water per second.

Defendants Fees and Haenggi claim as riparian owners, and defendant A. V. Wood (as successor in interest of Clyde Baker) claims by appropriation to the extent of 12 miner's inches, and also as a riparian owner.

Vernor Gill (successor in interest to defendant Beals Becker), F. W. Frank (successor in interest to defendant James Perrott), James E. Drumm (successor in interest of defendant W. O. Pickerill), Paul Showalter (successor in interest of defendant Albert Harris), and defendants F. A. Graham, E. A. Stellar, J. F. Becker, John G. Davis, John A. Todd, F. D. Bailey, W. C. Talbot, and D. S. Arbuckle, claim ownership as tenants in common of what is known as the Graham-Osborn ditch, and by appropriation the right to divert 6 cubic feet of water per second.

Julia P. Hobert (as successor in interest of defendant D. B. Kellerhals), Mary E. Faudree (as successor in interest of defendant L. E. Faudree), and defendants W. C. Talbot, R. T. Goul, Harvey Mounts, Goldstein & Iseman, Inc., Bank of America National Trust & Savings Association, C. W. Wilson, Emma R. Stellman, Amelia Talbot, Pearl E. Dicley, Walter W. Todd, May Sutch (formerly May Taylow), and Mabel G. A. Hoover, claim by appropriation the right to divert 100 cubic inches of water per second under what is described as the Wheat and Baker right. These claimants, neither individually nor as a group, own any ditch or diversion works, but the water claimed by them is diverted by means of a canal or ditch owned by a corporation known as Pleasant Valley Canal Company, and known as the Pleasant Valley ditch or Pleasant Valley canal.

Defendants Henry Talley, Eva Sechrest, and W. N. Bowen claim ownership with the Springville Public Utility district of the Walker ditch (sometimes known as the Talley ditch) and by appropriation the right to divert 40 cubic inches of water per second.

Defendant Pleasant Valley Canal Company claims the right by appropriation to divert 6 cubic feet of water through the Pleasant Valley ditch, and as against the plaintiffs, they claim the further right to divert 40 miner's inches of water by purchase from F. H. Entriken et ux., and Clyde Baker et ux., consented to by James Akin, predecessor in interest of plaintiff Emma Akin.

Defendant Mt. Whitney Ditch and Water Company claims the right by appropriation to divert, at two points on the course of the stream, a total of 4 cubic feet of water per second.

As to the other defendants, the record is somewhat confusing. It does not appear that defendants Pleasant Valley Ditch Company, C. P. Itzenhauser, O. K. Snyder and Sophie R. Noller were served with summons. No appearance by any of them is on file, nor does it appear that they participated in the trial, or that their rights were adjudicated by the judgment.

Defendants C. A. Polson and Fannie F. Urbach appeared by demurrer to the complaint; their demurrers were overruled, but no answers were filed. The judgment recites that they participated in the trial, while in the reporter's transcript it appears that they did not. However, the rights of neither were adjudicated by the judgment.

One George Hirt, describing himself as "sued as John Doe", interposed a demurrer to the original complaint. That demurrer was overruled by the court, and no answer was filed. One of the defendants named in the complaint in intervention is "G. E. Myrick (substituted for George Hirt)". Myrick appeared to this complaint, and claimed as a riparian owner. At the opening of the trial one of the attorneys for the other defendants indicated that he had been consulted with a view to a substitution of attorneys for Myrick, but nothing definite was agreed upon, and the trial proceeded in the absence of the attorney of record for Myrick. At the close of the trial, one of the attorneys for the other defendants announced that "Mr. Myrick doesn't intend to file an answer or appearance in this case". At the request of the attorney for plaintiffs, Myrick's default was then ordered entered. The judgment recites no appearance on the trial by Myrick, and in the findings the rights of plaintiffs are found to be "prior, paramount and superior to each and every claim and right of G. E. Myrick, successor to and substituted for defendant George Hirt, and it is true that said defaulting defendant has no right or claim in or to said waters as against said plaintiffs". The judgment, however, recites "that any and all rights of plaintiffs in this action in and to the waters of said Tule River are, and each of said rights is, subject and subordinate to the rights of each and all of the defendants

in this action'' with certain exceptions, not including in such exceptions the right of Myrick. It is apparent, therefore, that plaintiff appellants have just cause for complaint that with regard to this defendant, the judgment is not supported by the findings. After the demurrer of George Hirt to the complaint was overruled, neither he nor Myrick appeared by answer, Myrick's default was entered, the findings determined that the rights of plaintiffs were paramount to those of Myrick, yet the judgment subordinates the rights of plaintiffs to those of Myrick.

At the conclusion of the trial, the court found that, subject to the rights of all defendants except defendants Fees and Haenggi, the plaintiffs were owners as tenants in common of the Crabtree-Akin ditch (also known as the Osborn-Crabtree ditch) and of the right to divert, by means thereof, 1 cubic foot of water per second from Tule River, and to that extent found such rights to be superior to those of defendants Fees and Haenggi as riparian owners. Subject to the paramount claims of all defendants, the court found that the several interveners were entitled to divert an unspecified quantity of water from Tule River through the following ditches: J. A. Wardlaw, R. V. Wardlaw, D. D. Hoag, and Lillian F. Hollenbeck, through the Clement-Manier ditch (also known as the Cameron ditch); Anna B. Wardlaw, through the Rose (or Marksbury) ditch; Anna B. Wardlaw and Wm. H. Traeger, through the Foote ditch; H. A. Wilcox, Wm. G. Moser, L. O. Brough, and Grace Traeger, through the Wilcox ditch; and E. F. Wallace (successor in interest of Sena M. Wallace), Frank Harvey, C. J. Byers, and Wm. H. Traeger, through the Geo. B. Vincent ditch.

As to the defendants, the court found that the owners of the Baker and Wheat right were collectively entitled to take out of the Tule River, by means of the Pleasant Valley canal or ditch 2½ cubic feet of water per second; that the Pleasant Valley Canal Company was the owner of the Pleasant Valley canal or ditch, and through it was entitled to take from Tule River 3½ cubic feet of water per second; and that the other defendants were entitled to take from said river the following: The owners of the Talley ditch, 1 cubic foot; the owners of the Graham-Osborn ditch, 6 cubic feet; the Mt. Whitney Ditch and Water Company, owners of the Mt. Whitney ditch, 4 cubic feet; that A. V. Wood, as riparian

owner, was entitled to the entire ordinary flow, and in addition he was found to be the owner of the Entriken ditch, and the right to divert thereby 12 miner's inches of water from Tule River. His rights were found to be paramount to those of plaintiffs and interveners.

Defendants Fees and Haenggi were found entitled, as riparian owners, to the ordinary flow of the river, except as to the prior right of plaintiffs (excluding the interveners) to take 1 cubic foot of water per second.

The judgment expressly withheld any adjudication of rights as between the plaintiffs; or as between the interveners; or as between the defendants; or as between the plaintiffs and interveners.

From the judgment entered therein on July 31, 1933, the plaintiffs, and the interveners, have appealed. In support of the appeal, briefs have been filed only by plaintiffs, and by the interveners J. A. Wardlaw and R. V. Wardlaw, described as successors in interest of Anna B. Wardlaw in the Rose (Marksbury) ditch. In the opening brief of these interveners appears the following: "That since the filing of said notice of appeal all other interveners, save the undersigned J. A. Wardlaw and R. V. Wardlaw as proprietors of the Rose Ditch have abandoned their intention to so appeal from said judgment." Therefore, as concerns appellants, the case narrows itself down to the respective rights of plaintiffs, in the Crabtree-Akin (known also as the Osborn-Crabtree and as Jones-Slayden) ditch, and the rights of interveners J. A. Wardlaw and R. V. Wardlaw in the Rose (or Marksbury) ditch.

Defendant Robert Haenggi, one of the respondents, has not participated in any of the briefs on appeal.

It is the contention of appellants that the findings are not in accord with the evidence; that contrary to the findings, the evidence establishes that the several appropriations by appellants or their predecessors in interest were prior in point of time to the appropriations made by such of the defendants as rely on appropriation, and prior to the issuance of patents by the United States to the predecessors in interest of such of the defendants as claim under riparian ownership.

The court here found the ultimate facts that the rights of plaintiffs were not prior in time or paramount or superior to those of defendant-appropriators, nor, with certain

reservations, to those of the defendant-riparian owners; also, that the rights of the interveners are not prior in time or paramount or superior to those of any of the defendants. These findings are in accord with the issues raised by the pleadings, and cannot be considered as conclusions of law. (*Fitzpatrick* v. *Underwood,* 17 Cal. (2d) 722 [112 Pac. (2d) 3].) There was implied in these findings a determination of all probative facts necessary to sustain them. (24 Cal. Jur. 974; *Reiniger* v. *Hassell,* 216 Cal. 209 [13 Pac. (2d) 737].) Among the probative facts are that the appropriations by defendant were first in point of time (Civ. Code, sec. 1414), and that the diversions as against the riparian owners were made on land then belonging to the United States. (*San Joaquin etc. Canal & Irr. Co.* v. *Worswick,* 187 Cal. 674 [203 Pac. 999] ; *Thorne* v. *McKinley Bros.,* 5 Cal. (2d) 704 [56 Pac. (2d) 204].) The ultimate facts, carrying by implication a determination of probative facts, were, in the case at bar, founded on conflicting evidence. Therefore, if there exists in the record substantial evidence to support the findings, this court, on appeal, may not disturb the same. (*Evans* v. *Fong Poy,* 42 Cal. App. (2d) 320 [108 Pac. (2d) 942].) The transcript of the evidence here consists of more than 3,000 pages. This has been carefully reviewed by us, and we find abundant, substantial evidence supporting the conclusions of the trial court. It is not within the province of an appellate court to interfere with those conclusions.

◼ Appellants contend, too, that the findings of the trial court are inconsistent. This inconsistency, it is claimed, arises from the fact that plaintiffs' ditch is downstream from that of defendants, and the trial court found that the appropriations by defendant-appropriators were prior in time to that of plaintiffs, and also found that defendant-appropriators gained rights by prescription. It is argued that if there was priority of appropriation by defendants, their rights could not at the same time arise out of prescription or adverse user; that one is inconsistent with the other. ◼ The ultimate fact to be found, however, is as to the respective rights of the parties, not as to how those rights were acquired. The trial court having arrived at the ultimate fact, any apparent conflict in the findings is immaterial; the judgment being supported by findings based on evidence sustaining those findings,

the others will be disregarded. (*Epstein* v. *Gradowitz*, 76 Cal. App. 29 [243 Pac. 877].) It has been held that if inconsistent theories are relied upon, and evidence to support a finding on either theory appears in the record, the findings on the other theory may be disregarded as surplusage. (*Baird* v. *Ocequeda*, 8 Cal. (2d) 700 [67 Pac. (2d) 1055] ; *Empire W. S. I. Dist.* v. *Stratford I. Dist.*, 10 Cal. (2d) 376 [74 Pac. (2d) 248].) ■ Moreover, it is a fundamental rule that findings will be so construed as to uphold, rather than to defeat, the judgment. (*Garland* v. *Smith*, 131 Cal. App. 517 [21 Pac. (2d) 688].)

■ The contention is made by appellants that there is no proof of beneficial use of the water by defendants. The statement is made in appellants' brief that the trial court found that certain of the defendants were wasteful in the use of waters diverted by them. We find no support of that statement in the record. There is a provision in the judgment that for the purpose of maintaining an economical use of the waters of Tule River, and for the proper measurement of the waters diverted, there be installed at the head of the ditches of defendants automatic measuring devices and a wasteway but we find no finding of any wasteful use. The court did find that all waters appropriated by the appropriator-defendants were beneficially used. There is substantial evidence that there was a long-continued use of a specified quantity of water by the several defendants, and therefrom arises a presumption that such use was necessary and beneficial. (*Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.*, 3 Cal. (2d) 489, at 548 [45 Pac. (2d) 972].)

■ The findings of the trial court that the cause of action of plaintiffs is barred by the provisions of sections 318, 319 and 321 of the Code of Civil Procedure is challenged as beyond the issues raised by the pleadings. While the answers of certain of the defendants, among them the Graham-Osborn claimants, do not in terms plead the statute of limitations, the plea was interposed by other defendants. The case was tried on the theory that the statute and adverse user were in issue as to all defendants; no objection was made to the introduction of evidence to support this theory, nor was any attempt made to limit it to those defendants who had pleaded the statute. The court was therefore authorized to find upon the issue, even though not directly tendered by the pleadings.

(*Gray* v. *The Janss Investment Co.*, 186 Cal. 634 [200 Pac. 401].) The plaintiffs themselves introduced evidence on the issue, and were in no sense misled by the failure of some of the defendants to plead the statute. (*Short* v. *Orland Oil Syndicate, Ltd.*, 29 Cal. App. (2d) 326 [84 Pac. (2d) 324].)

The judgment is attacked by appellants on the ground of uncertainty. It is contended that the award by the trial court to the defendant-appropriators should have been limited to maximum amounts in acre feet per year, in addition to being fixed in cubic feet per second. In support of their contention, appellants cite *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist., supra,* at page 545. We do not find that case to hold that the limitation on the award called for by appellants is an essential of a valid judgment. The same contention as is here made was there argued, and while the suggestion was made by the court that it might sometimes be helpful to have fixed by the judgment an ultimate limit in acre feet per year in addition to the award in cubic feet per second, it was held that failure to do so was not reversible error.

Nor do we find any merit in appellants' contention that the judgment is uncertain in failing to establish the quantity of water which the upper riparian owners may divert. The action here was by appropriators downstream against an upstream riparian owner, and the court determined the extent of the right of the lower appropriators; it is none of their concern as to what amount of water the upper riparian owner is entitled to, it is sufficient if their rights as against him are fixed. *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist., supra,* does not hold the contrary. There the action was one begun by riparian owners against upstream appropriators. Here downstream appropriators claim against upstream riparians. For the same reason, while the 1928 amendment to the Constitution (art. XIV, sec. 3) was effective at the time of trial and judgment herein, the judgment rendered here is not contrary to the terms of that constitutional provision.

The judgment is modified by adding thereto a paragraph designated as "12a", and reading as follows:

"That defendant G. E. Myrick has no right, title or interest in and to the waters of said Tule River and he is forever restrained and enjoined from in any manner interfering with the flow of said river in any manner so as to prevent any of

the parties to this action from exercising any right, title or interest which they or any of them are found to own under the terms of this judgment.''

As so modified, the judgment is affirmed. Respondents will recover their costs on appeal.

Tuttle, J., and Pullen, P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 11, 1941.