38 F.3d 1219
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 W.H. BRESHEARS, INC., Plaintiff-Appellant,
v.
FEDERATED MUTUAL INSURANCE COMPANY, Defendant-Appellee
 No. 93-15252.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1994.
Decided Oct. 17, 1994.
 
 Before: CHOY, POOLE AND REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 W.H. Breshears Inc. appeals the decision of the district court granting Federated Mutual Insurance Company's Rule 50 motion for judgment as a matter of law. We affirm the decision in part, reverse in part, and remand for retrial.
 
 Background
 
 3
 Plaintiff filed suit against Federated, alleging fraudulent misrepresentation and breach of contract, after Federated denied full coverage for liability stemming from a gasoline spill at plaintiff's facility that damaged the land of adjacent property owners. The district court ruled that plaintiff failed to prove all of the elements of its fraudulent misrepresentation claim and that the policies at issue did not provide coverage for the types of damages caused by the spill. Plaintiff also appeals a separate decision by the district court excluding the testimony of other Federated insureds who were also allegedly misled as to the scope of their policies. The issues we are to decide are (1) whether the district court erred in refusing to admit the testimony of the other insureds, (2) whether the district court erred in granting judgment as a matter of law in Federated's favor on plaintiff's fraudulent misrepresentation claim, and (3) whether the district erred in granting judgment as a matter of law in Federated's favor on plaintiff's breach of contract claim.
 
 I. The Testimony Of The Other Insureds
 
 4
 Plaintiff contends that the district court erred in excluding the testimony of three other insureds who claimed that Federated had made misrepresentations to them, similar to the ones allegedly made by Dale Williams to Breshears, regarding the scope of coverage under the Commercial General Liability part of their policies. Such evidence would be admissible if it met the requirements of Fed.R.Evid. 406 for habit or routine practice.[1] Plaintiff, however, did not proffer sufficient evidence to suggest that Federated's routine practice was to represent that its insureds would be covered under the CGL parts for the type of event that occurred here. Federated has entered into numerous insurance contracts. The three similar incidents alleged by plaintiff clearly are numerically inadequate to be considered probative evidence of a routine practice on Federated's part. Thus they are not relevant to a question of intent on the part of Federated or Williams to misrepresent coverage in the meeting with Breshears. Therefore, we hold that the district court did not err in refusing to admit the testimony of the three witnesses as evidence of habit, routine practice or intent.
 
 II. The Fraudulent Misrepresentation Claim
 
 5
 Plaintiff contends that at the December 1989 meeting between Breshears' officers and Federated's Marketing Representative, Dale Williams, Williams represented that plaintiff would be fully covered for all damages if an above ground tank were to spill gasoline as a result of vandalism. Williams denies that he made any such representation.
 
 
 6
 For the purposes of a Rule 50 motion, the district court must accept as true plaintiff's account that such misrepresentations were made. The district court nevertheless granted Federated's Rule 50 motion for judgment as a matter of law, concluding that the plaintiff had failed to meet the requirements for a valid claim of fraudulent misrepresentation. We disagree with the district court's conclusion.
 
 
 7
 Under California law, for a fraudulent misrepresentation claim, the plaintiff must show, among other things, that its reliance on the misrepresentation was justified and that it suffered injury as a result of its reliance. Hunter v. Up-right Inc., 6 Cal.4th 1174, 1183-84 (1993). The absence of either one of these elements precludes recovery. Gonsalves v. Hodgson, 38 Cal.2d 91, 101 (1951). The district court concluded that neither of these two elements was shown by plaintiff. We review the district court's Rule 50 judgment de novo, reversing if there is substantial evidence to support a verdict for the nonmoving party. See Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985).
 
 A. The Reasonable Reliance Issue
 
 8
 Plaintiff contends that the following evidence was sufficient for a jury to find that its reliance was reasonable: (1) testimony that Williams had said that Breshears would be fully covered if vandals caused a gasoline spill from an above ground tank; (2) Williams testified that he intended his customers to rely upon his descriptions of coverage; (3) Williams testified that he knew Federated would deny coverage for such a claim; (4) testimony that plaintiff's President believed the CGL part of the policy applied to above ground tanks; and (5) testimony that plaintiff's President did not have a copy of the 1990 Commercial Package Policy (containing the CGL part) when Williams made the alleged misrepresentations because no copy of the renewed policy was delivered to plaintiff before the spill occurred. We agree with plaintiff that these facts constitute sufficient evidence to support a finding for Breshears on the reasonable reliance issue.
 
 
 9
 Federated argues that other evidence showed that reliance on Williams' statements would be unreasonable as a matter of law. Federated also contends that the language of the policy was clear in explicitly not covering damage of this type, thereby precluding justifiable reliance on Williams' representations as a matter of law. Neither contention has merit. The evidence that Federated points to does not prove that plaintiff's version of the events is untrue or that plaintiff's reliance on Williams' statements was unreasonable. Under California law, even though the policy indeed might not have been reasonably read to cover the losses incurred, absent notice to that effect the insured may still justifiably rely on the contrary representations of the insurer's agent. Clement v. Smith, 16 Cal.App.4th 39, 45 (1993). Although Federated claims to have sent notices to Breshears regarding the effect of the pollution exclusion clauses in the policy, there is no evidence of notice given to Breshears that a vandalism -caused spill would not be covered. Thus we conclude that there was sufficient evidence to support a finding that Breshears reliance on Williams' representations was justifiable.
 
 B. The Resulting Injury Issue
 
 10
 The district court noted that the plaintiff's president testified at trial that he had decided to cancel his specific pollution coverage policy with Federated, regardless of representations made by Williams, because of the high cost of the policy. In fact, Breshears dropped pollution coverage for the site at issue before the meeting with Williams even took place, thus Williams' statements cannot have caused Breshears to give up its insurance protection for the gas spill. Federated thus argues, and the district court agreed, that the only way plaintiff could have been damaged by Williams' misrepresentations would be for plaintiff to have shown that it could have obtained pollution insurance from another insurer at a cost it would have been willing to pay. Plaintiff did not produce any such evidence, thus the court held that the plaintiff did not meet the injury requirement as a matter of law.
 
 
 11
 Plaintiff contends that the evidence it produced, showing that it would have looked for other insurance had the alleged misrepresentations not been made, was sufficient to satisfy the resulting damage element. Indeed, plaintiff's President also testified that if he had not been able to obtain pollution insurance from another insurer, he would have probably looked to sell the site. If successful, either option would have avoided the pecuniary damage plaintiff has suffered in this case as a result of its liability for the spill. Plaintiff contends that, in reliance on Williams' statements that it was insured for incidents such as gasoline spills, it did not look for viable alternatives during the period between its dropping of its pollution insurance and the time of the accident.
 
 
 12
 Under California law, a plaintiff may recover for fraud when he shows that, because of the defendant's misrepresentations, "he has sustained some pecuniary damage or injury by reason of having been put in a position worse than he would have occupied had there been no fraud." R.D. Reeder Lathing Co. v. Cypress Ins. Co., 3 Cal.App.3d 995, 999 (1970). We conclude that plaintiff was not obligated under California law to show that it would have been successful, in either trying to sell the site or obtaining another insurance policy at a low price, in order to have met its burden. Plaintiff produced sufficient evidence that it has sustained injury by having been put in a worse position by Williams' statements. Whether plaintiff's position of looking for coverage, or to sell the site, is a better position than that of still believing it is fully covered is a question that the jury should have decided in this case as a factual matter.
 
 
 13
 Therefore, we conclude that the district court erred in ruling for Federated as a matter of law on the fraudulent misrepresentation claim, and we remand that claim to the district court for retrial.
 
 III. The Breach Of Contract Claim
 
 14
 Plaintiff contends that its policy with Federated at the time of the incident covered all of the damage from the spill in question. It poses three separate arguments showing how the language in the policy could be interpreted to cover the losses at issue. First, it argues that the damage from the spill is covered under the Petro Pac part of the policy. Second, it argues that the damage from the spill is coverable as a personal injury under Coverage B, to which there is no exclusion for pollution. Third, it argues that since ambiguous terms under California law are interpreted in favor of insureds, and exclusions from coverage have to be expressed clearly and explicitly, the policy should be construed to cover all of the damage from the spill. The district court, however, ruled that the policy did not cover the damage at issue. We review that determination de novo.
 
 
 15
 A. The Petro Pac Part Of The Coverage Does Not Cover The Kind Of Damage Present In This Case.
 
 
 16
 The plaintiff argues that the Petro Pac Part of the Commercial Package Policy actually provides coverage for the cleanup costs resulting from a spill caused by vandalism. Although under the Petro Pac Part vandalism is a covered cause of loss, and Federated is obligated to pay for the "resulting damage" caused by such specified causes of loss, the Petro Pac Part only provides coverage for resulting damage to plaintiff's own "covered property." As defined in the policy, "covered property" did not include "land," "water," or "pavement." Thus, because damage to covered property did not include damage to pavement, there is no liability under the Petro Pac Part of the policy for the damage the spill caused to plaintiff's own pavement at the 720B Street site. Furthermore, because "covered property" as defined only includes property owned by the plaintiff, there could be no liability under the Petro Pac Part of the policy for the damage the spill caused to the adjacent lands not owned by the plaintiff. We note, too, that these adjacent lands would not be covered anyway because "land" was also excluded from the "covered property."[2] Thus, we hold that the district court did not err in determining as a matter of law that Federated was not obligated to pay for the cleanup costs under the Petro Pac Part of the policy.
 
 
 17
 B. The Personal Injury Coverage Does Not Apply To The Damages Resulting In This Case.
 
 
 18
 Plaintiff also argues that the damages caused by the spill are provided for under Coverage B of the policy, dealing with coverage for "personal injury." Under Coverage B, Federated agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which the insurance applies." Personal injury is defined in the policy to mean "an injury, other than bodily injury, arising out of one or more of the following offenses: ...," one of which being "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." The meaning of "wrongful entry" is in contention in this case.
 
 
 19
 The district court concluded that "wrongful entry takes place when someone other than the landlord claims a possessory interest in the room, dwelling or premises." The court further concluded that the insurance for wrongful entry did not protect against torts such as trespass or nuisance under which plaintiff might be found liable to its adjacent property owners.
 
 
 20
 Plaintiff contends that the district court's interpretation of the policy's language is inconsistent with California law. Plaintiff points out that Federated failed to define "wrongful entry" in the policy, and that the spillage of gasoline onto the lands of another can be a "wrongful entry" under California law, therefore concluding that Coverage B provides coverage for it from third party environmental contamination claims.
 
 
 21
 There appears to be some conflict in California law as to whether "wrongful entry" can encompass pollution damage caused to a person's land. Cf Fibreboard Corp. v. Hartford Accident & Indemnity Co., 16 Cal.App.4th 492 (1993) and Titan Corp. v. Aetna Casualty and Surety Co., 22 Cal.App.4th 457 (1994). Since most of the California cases interpret the phrase broadly, however, we will assume that the term can be construed to encompass damage from the gasoline spill. As a recent California case, Fibreboard Corp. v. Hartford Accident & Indemnity Co., stated:
 
 
 22
 Although wrongful entry can describe a trespass committed for the specific purpose of dispossessing the owner or occupant of land, ... it can also describe a more general, "simple trespass" involving no intent to dispossess: 'Every wrongful entry upon land in the occupation or possession of the owner constitutes a trespass....'
 
 
 23
 Fibreboard Corp. v. Hartford Accident & Indemnity Co., 16 Cal.App.4th 492, 511-12 (1993).
 
 
 24
 More importantly in this case, however, California law is clear that insurance provisions should be interpreted "in context, with regard to [their] intended function in the policy." Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265 (1992). Given the context of Coverage B, we feel that the personal injury provisions cannot reasonably be construed to cover property damage from pollutants. As the Titan court stated concerning a policy very similar to this one, "[w]e must examine the language in context ... we do not believe it is objectively reasonable for an insured to expect 'personal injury' to mean 'property damage.' " Titan Corp. v. Aetna Casualty and Surety Co., 22 Cal.App.4th 457, 476 (1994).
 
 
 25
 Plaintiff's interpretation of the policy is unreasonable because of the clear pollution exclusion provisions for property damage stated within the other coverages that plaintiff held in its policy with Federated. While it is true that, by itself, "personal injury" could conceivably be construed under California law to cover a spill like the one in this case, no reasonable insured could understand the personal injury section of Breshears' policy to cover pollution property damage. Such an interpretation would thereby nullify the effect of other clear provisions in the policy. We are persuaded that the Property Damage provision in Coverage A was clearly the only provision intended by the parties to govern claims involving injuries to land, and that provision expressly excluded damages from pollutants.
 
 
 26
 It is important to remember in this case that Breshears had held a pollution liability coverage policy from Federated close to the time of the accident, but then chose to drop the coverage for reasons of cost. California courts would be reluctant to strain the common sense interpretation of a policy so that plaintiff could enjoy coverage it has not paid for. Fragomeno v. Ins. Co. of the West, 207 Cal.App.3d 822, 827 (1989). Indeed, pollution damages for a company such as plaintiff can be both high-cost and high-risk liabilities, indicating the unreasonableness of expecting such liabilities to be covered in a limited policy like plaintiff's without their being specifically included in the policy. The policy at hand does not contain any indication of pollution liability coverage, does not charge for such coverage, and it contains clear and explicit assertions in the package that property damage resulting from pollutants is not covered. The fact that Coverage B for "personal injury" does not contain its own pollution exclusion clause merely points out that the insurance company never contemplated (justifiably) that Coverage B might be interpreted to cover pollution damages to land, given the context of the whole policy.
 
 
 27
 We therefore reject plaintiff's arguments regarding the interpretation of the personal injury provisions.
 
 
 28
 C. To Construe The Personal Injury Provisions In This Case To Cover Environmental Property Damage Would Not Be Objectively Reasonable.
 
 
 29
 Plaintiff argues that because ambiguities in insurance policies under California law are uniformly resolved in favor of the insurer, interpretation of the provisions against coverage is contrary to California law. A.I.U. Insurance Co. v. Superior Court (FMC), 51 Cal.3d 807, 821 (1990). Of course, the interpretation for the insured must be an objectively reasonable one and the insurance provisions should not be unduly strained in interpretation. Fragomeno v. Ins. Co. of the West, 207 Cal.App.3d 822, 827 (1989). We feel that plaintiff's interpretation would unduly strain the common sense interpretation of the provisions in the policy given the entire context of the policy and the explicit provisions in other parts of the policy excluding coverage for environmental damage to property.
 
 Conclusion
 
 30
 For the foregoing reasons we affirm the ruling for Federated as a matter of law on the breach of contract claim, we conclude that the district court did not err in granting Federated's motion in limine to exclude testimony from other insureds of Federated, and we reverse the district court's ruling as a matter of law on the Fraudulent Misrepresentation claim and remand that claim to the district court for further proceedings.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.Rule 36-3
 
 
 [1]
 Rule 406 states:
 Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. 28 U.S.C.S. Appx Fed.Rules of Evid 406 (1994).
 
 
 [2]
 The "covered property" limitation applies equally regardless of whether vandalism was the only cause of loss or whether it was a concurrent cause of loss